IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------ :
UNITED STATES OF AMERICA            : CASE NO. 1:04 CV 478
                                                          :
                                    Plaintiff :
                                                          :
            -vs-                              : MEMORANDUM OF OPINION AND
                                                          : ORDER DENYING THE DEFENDANT'S
                                                          : MOTION FOR MISTRIAL (ECF 66)
GERALD ATKINSON                        :
                                                          :
                                 Defendant :
                                                          :
------------------------------------------------------ :

UNITED STATES DISTRICT JUDGE LESLEY WELLS

This matter is before the Court on defendant Gerald Atkinson's motion for mistrial. (ECF 66).  Mr. Atkinson's motion for mistrial was initially raised during trial on Thursday, 5 January 2006, after the government elicited testimony from its witness, Robert Buerger, that Mr. Atkinson stated in the Spring of 2003 that "if he did time over this, he would have Terrell Perkins killed."[1]  The defendant's motion for mistrial was denied on 5 January 2006.  On Monday, 9 January 2006, the parties were instructed to brief the issue of whether a mistrial is appropriate due to Mr. Buerger's testimony.  The defendant filed his motion, and the government filed its brief in opposition to defendant's

---

[1] Terrell Perkins worked with both Gerald Atkinson and Robert Buerger at Electrolizing Corporation of Ohio ("Electrolizing") during the period of time at issue in the Indictment against Mr. Atkinson.  After he was terminated from Electrolizing, Mr. Perkins informed Electrolizing's customer Marine Mechanical Corporation ("MMC") that he and others had "pre-bent" coupons at Electolizing that were subsequently sent to MMC.  As a result of Mr. Perkins' disclosure, a criminal investigation was ultimately initiated.

motion on Tuesday, 10 January 2006. (ECF 66 & 67). After full consideration, the defendant's motion for mistrial is denied for the reasons set forth below.

### A. Legal Standards

"'A defendant may move for a mistrial where there is a legitimate claim of seriously prejudicial error,' such that the defendant is unable to obtain a fair trial." United States v. Phibbs, 999 F.2d 1053, 1066-67 (6th Cir. 1993). A defendant's motion for mistrial should be granted "[o]nly if the erroneously admitted evidence is of an exceptionally prejudicial character, such that its withdrawal from consideration by the jury cannot be expected to remove the harm." United States v. Carr, 5 F.3d 986, 993 (6th Cir. 1993). This Court's "primary concern" in considering the motion for mistrial is "fairness" to Mr. Atkinson."[2] United States v. Thomas, 2000 U.S. App. LEXIS 29372, *12-*14 (6th Cir. 2000).

### B. Legal Analysis

---

[2] In reviewing the denial of a motion for a mistrial, the Sixth Circuit employs a five-factor test to determine prejudice to the defendant:

(1) whether the reference was unsolicited;

(2) whether the line of questioning leading up to the response was reasonable;

(3) whether there was a curative instruction from the judge that was immediately clear and forceful;

(4) whether there was any bad faith evidenced on the part of the government; and

(5) what part of the total evidence the reference constituted.

United States v. Pittman, 129 Fed. Appx. 917, 921 (6th Cir. 13 April 2005) (citing United States v. Forrest, 17 F.3d 916, 920 (6th Cir. 1994)).

A preliminary issue in determining whether a mistrial is warranted, is whether the "reference" prompting the motion for mistrial was "erroneously admitted." Carr, 5 F.3d at 993. Here, the evidence was not erroneously admitted.

The Sixth Circuit has recognized that evidence a defendant threatened a witness is "considered spoliation evidence that is probative of a defendant's consciousness of guilt."[3] E.g., United States v. Mendez-Ortiz, 810 F.2d 76 (6th Cir. 1986) (holding that it was not plain error to admit evidence defendant threatened a government witness); United States v. Franks, 511 F.2d 25 (6th Cir. 1974) (affirming district court's decision to admit evidence that defendant conspired to kill a government witness); Pittman, 129 Fed. Appx. at 921 (affirming district court's decision to admit evidence that defendant threatened police officers); United States v. Rodney, 1993 U.S. App. LEXIS 20030, *17-*19 (6th Cir. 1993) (explaining that evidence a "defendant attempted to bribe or threaten a witness is admissible to show consciousness of guilt."); United States v. Parker, 1994 U.S. App. LEXIS 10689, *31 (6th Cir. 1994) (affirming district court's denial of motion for mistrial based upon evidence that the defendant threatened he would kill a witness where the government showed the evidence was relevant to explain inconsistencies in the witness's testimony).

The evidence which prompted the defendant's motion for mistrial was elicited from the government's witness, Robert Buerger, on direct examination:

> Q. I want to draw your attention to spring time of 2003. Did you ever have any conversations with [Gerald Atkinson] about that time?

---

[3]The defendant has not directed this Court's attention to any case where similar "threat" evidence was found to warrant a mistrial – or was even excluded from evidence. (ECF 66).

3

> A. Yes. I was working on my motorcycle at a mutual friend of ours, John Rowland, who lives very close to Jerry.
>
> Q. Is that the Mr. Rowland who you talked about yesterday who worked at Electrolizing?
>
> A. Correct. He is the maintenance man at Plant Number 1. And John was doing some work, we were painting my motorcycle and, you know, it was all in pieces and whatnot. Jerry would come over frequently with some beer, we would just sit down, we are all friends, we would sit and talk.
>
> Q. And did you say anything to Mr. Atkinson about your involvement in this case?
>
> A. Yes. We all knew it was going down. Basically, I figured -- I had already talked to the investigators at this time, but not the prosecution, so Jerry knew that I was going to talk -- on my way to talk to the prosecutors, and basically Jerry was asking me what are you going to do, and I says, you know, I'm going to tell the truth. I figured I owed it to Jerry, because of our friendship.
>
> Q. And did he say anything to you?
>
> A. Well, he wasn't upset with me that he showed, but he was very upset at the situation. He was actually so upset that he said that if he does time over this, he would have Terrell Perkins killed.
>
> Q. Did you take him seriously, Mr. Buerger?
>
> A. He was angry. It is hard to say when you're upset like that, but I got to admit, every time I leave the house, I have to look around the corner.

The statement described by Mr. Buerger was an indirect threat. The alleged statement was a threat against Mr. Perkins, but was not made to Mr. Perkins. Mr. Buerger, the person who allegedly heard the statement, indicated that he felt threatened. In these respects, the evidence does not constitute the classic scenario of threats against a witness considered by the Sixth Circuit. Nonetheless, the statement is

4

probative of the defendant's consciousness of guilt and is therefore relevant to the matters at issue before the jury.

Evidence of the alleged statement does not unduly prejudice Mr. Atkinson. The testimony was elicited by the government on the sixth day of what has been a nine-day trial. The jury has heard the testimony of twenty-eight witnesses – *including*, Gerald Atkinson himself and John Rowland. Gerald Atkinson testified that he never made the statement attributed to him by Robert Buerger. John Rowland, who owned the property on which the conversation between Robert Buerger and Gerald Atkinson allegedly occurred, and who was present at the relevant time, testified that he never heard Gerald Atkinson make the statement attributed to him by Mr. Buerger. Because Mr. Buerger has pled guilty and cooperated with the government in this case, the jury will be given the appropriate instruction that Mr. Buerger's testimony is to be viewed with caution. See Sixth Circuit Pattern Jury Instruction, 7.07 (ed. 2005). Finally, the jury will be given an appropriate limiting instruction with regard to the "threat" evidence itself. Under these circumstances, there is no likelihood that the jury will give Robert Buerger's testimony regarding Mr. Atkinson's alleged statement undue weight or decide this case on an improper basis.

Mr. Atkinson argues that a mistrial is appropriate because he was ambushed by the government in that they failed to give him notice before trial that testimony regarding the alleged threat would be elicited from Mr. Buerger. (ECF 66). Based upon the nature of the questioning, there can be little doubt that the government purposely elicited the testimony at issue. In its opposition brief, the government makes no claim that it was unaware Mr. Buerger would relate the information that he did. (ECF 67).

5

While this Court would prefer to resolve such hotly contested evidentiary issue in advance, and the government's pre-trial disclosure would surely have facilitated that process, the government's failure to do so here does not require a mistrial.

In the full context of this lengthy, and well-litigated case, admission of the objected-to testimony is not "seriously prejudicial" to Mr. Atkinson. Phibbs, 999 F.2d 1053, 1066-67 (6th Cir. 1993). This Court has no doubt that Mr. Atkinson is able to obtain a fair trial before the jurors that have been chosen and who have listened to the evidence very carefully during the past nine trial days. Id. Thus, the defendant's motion for mistrial is denied.

## CONCLUSION

For the reasons set forth above, the defendant's motion for mistrial is denied.

IT IS SO ORDERED.

                                 /s/Lesley Wells
                                 UNITED STATES DISTRICT JUDGE

Dated: 11 January 2006